UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALAMAR CYRIL HOUSTON,

    Plaintiff,

v.

DANIEL GILL,

    Defendant.

No. 2:17-cv-00763 MCE CKD P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a California state prisoner proceeding pro se with this civil rights action filed pursuant to 42 U.S.C. § 1983. This action is proceeding on the complaint filed April 11, 2017 alleging that defendant Gill, an officer of the West Sacramento Police Department, violated plaintiff's Fourth Amendment rights by using excessive force during his arrest.[1] See ECF No. 6 (screening order). Defendant seeks summary judgment on the grounds that the use of force was objectively reasonable and because he is entitled to qualified immunity. ECF No. 20. The motion has been fully briefed by the parties. See ECF Nos. 21-22. For the reasons discussed below, the undersigned recommends that defendant's motion for summary judgment be granted.

---

[1] Defendant's motion for summary judgment incorrectly identifies the City of West Sacramento as an additional defendant in this action. However, pursuant to this court's screening order of June 12, 2017, the only defendant that was ordered served was defendant West Sacramento Police Officer Daniel Gill. Thus, the court finds it unnecessary to address any arguments in the summary judgment motion pertaining to the City of West Sacramento.

**I.  Summary Judgment Standards Under Rule 56**

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

////

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**II.     Legal Standards Governing the Use of Force**

The gravamen of plaintiff's complaint is that defendant Gill used excessive force in violation of the Fourth Amendment by allowing his K-9 partner Diesel to bite and subdue plaintiff. An excessive force claim in the course of a police officer's seizure of an arrestee is analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). Objective reasonableness is determined "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. "The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Id. at 396.

The reasonableness of a seizure is determined by balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the

governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983). In determining whether the manner of a seizure is objectively reasonable, courts consider: "(1) 'the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted,' (2) 'the government's interest in the use of force,' and (3) the balance between 'the gravity of the intrusion on the individual' and 'the government's need for that intrusion.'" Lowry v. City of San Diego, 858 F.3d 1248, 1256 (9th Cir. 2017) (en banc) (quoting Glenn v. Washington Cnty., 673 F.3d 864, 871 (9th Cir. 2011)). The government's interest in the force used is determined by assessing (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect actively resisted arrest or attempted to escape. Glenn, 673 F.3d at 871 (citing Graham, 490 U.S. at 396). Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97.

### III. Facts[2]

In his verified complaint, plaintiff alleged that he was bitten on the leg and the back of his head by a police canine dog named Diesel in an effort to arrest him following a police pursuit. ECF No. 1 at 21-23. The dog's handler, West Sacramento Police Officer Daniel Gill, ordered Diesel to bite plaintiff two times and struck plaintiff on the back of the head with his elbow on several occasions. Id.

Officer Gill was on duty driving a fully marked West Sacramento Police Department patrol vehicle on June 30, 2015. Defendant's Statement of Undisputed Material Facts, at 1-2 (hereinafter "DSUF"). Officer Gill has been partnered with his canine, Diesel, since February 2014. DSUF at 3. The two have completed 400 hours of required training which has included obedience, agility, search, handler protection, and other related trainings. DSUF at 4. Diesel was certified in April of 2014 by the Peace Officer Standards and Training, and has been re-certified

---

[2] All facts are undisputed unless otherwise indicated.

4

every year for the past four years per POST standards for patrol and narcotics. DSUF at 5. Diesel is trained in "bite and hold" apprehension which means that upon Officer Gill's command, Diesel will bite a suspect and hold the bite until Officer Gill determines that the suspect no longer poses a threat to the safety of the public. DSUF at 6-7. Once the suspect complies with commands, Officer Gill will order Diesel to release the bite and then heel or lay down. DSUF at 8. Prior to deploying Diesel to apprehend a suspect, Officer Gill is trained to consider several factors, including: 1) the severity of the crime involved; 2) whether the suspect poses an immediate threat to the safety of officers or the public; and, 3) whether the suspect is actively resisting. DSUF at 9.

At approximately 6:20 p.m. on June 30, 2015, Officer Gill heard dispatch advise over the radio of a felony hit and run involving a vehicle and several bicyclists in Clarksburg. DSUF at 10. Officer Gill also heard dispatch advise that the suspect might be driving a grey Kia SUV that was last seen driving northbound on South River Road. DSUF at 11. Approximately one minute later, West Sacramento Police Officer Albert advised over the radio that he observed a blue Kia SUV with major front-end damage near northbound Jefferson Boulevard and Park Boulevard. DSUF at 12. At approximately 6:25 p.m., Officer Gill saw a blue Hyundai SUV with major damage to the front windshield and bumper driving near northbound Jefferson Boulevard and Park Boulevard. DSUF at 13. Officer Gill observed a large dent covering approximately half of the hood and front bumper as well as windshield damage to the entire passenger side of the vehicle. DSUF at 16. Based on the extent of damage to the vehicle, Officer Gill inferred that the individuals who were struck by the car likely sustained serious injuries. DSUF at 17. Officer Gill ran the vehicle's license plate number and determined that the vehicle had been reported stolen to the Sacramento Sheriff's Department earlier that day. DSUF at 14. "Upon learning the vehicle matched the description of the vehicle used in the hit and run and had been reported stolen," Officer Gill activated his overhead lights and siren in an effort to initiate a traffic stop. DSUF at 15.

The vehicle failed to stop and a pursuit ensued. DSUF at 18. Plaintiff testified at his deposition that he first noticed that he was being pursued by law enforcement when Officer Gill

activated his overhead lights. DSUF at 19. Plaintiff led Officer Gill on a high-speed chase starting from Jefferson Boulevard just north of Michigan Boulevard, across Tower Bridge Gateway, onto Capitol Mall, then onto 8th Street, back to Capitol Mall, onto 9th Street, then L Street, back to 8th Street, onto K Street, back onto 9th Street, and ending in Jazz Alley just west of 10th Street. DSUF at 21-38. During this chase, Officer Gill observed plaintiff make an illegal U-turn, run 6 red lights, drive through a parking lot at 30 mph, drive down West Capitol Avenue at speeds of approximately 70 m.p.h, almost collide with several vehicles, and drive the wrong-way down three different streets. DSUF 21-37. The entire police pursuit was captured on Officer Gill's dashcam video.[3] See ECF No. 20-3 at Exhibit 5.

Once plaintiff exited the vehicle, Officer Gill immediately ordered him onto the ground. DSUF at 39. Plaintiff heard this order and did not comply. DSUF at 40. Instead, plaintiff "took off running" in order to "get away." DSUF at 40. Plaintiff fled on foot while Officer Gill and his canine partner Diesel pursued him. DSUF at 41-42. Plaintiff was approximately 40 yards ahead of Officer Gill as he pursued him in the K Street area. DSUF at 43. Officer Gill noticed that several pedestrians were in the surrounding area, but he did not know whether plaintiff was armed. DSUF at 44, 46. Based on the actions that he witnessed, Officer Gill believed that plaintiff posed an immediate threat to the public during his foot pursuit as plaintiff could have injured a bystander or taken one hostage in order to avoid arrest. DSUF at 45, 47. No other officers were on scene during Officer Gill's foot pursuit. DSUF at 48.

Officer Gill made a split-second decision based on the circumstances at the scene as well as his training and experience to deploy his canine Diesel in order to apprehend plaintiff. DSUF at 49. Plaintiff heard Officer Gill order his canine to apprehend him, but he did not stop fleeing. DSUF at 50. Diesel grabbed plaintiff by biting his right ankle. ECF No. 21 at 8 (Preliminary hearing testimony of Officer Gill); ECF No. ECF No. 20-3 at 65 (Plaintiff's Deposition); ECF No. 20-3 at 9, ¶ 24 (Officer Gill's Affidavit). Plaintiff continued to resist by striking the dog and

---

[3] Defense counsel submitted an affidavit indicating that a copy of the video was sent to the litigation coordinator at CSP-Los Angeles County in order to allow plaintiff to view it. ECF No. 20-3 at 54-55 (Affidavit of Nicole Cahill). Plaintiff does not dispute this.

pushing Diesel's face. DSUF at 51. Officer Gill believed that plaintiff was attempting to place Diesel in a choke hold. DSUF at 52. Once he caught up to plaintiff, Officer Gill ordered plaintiff to stop resisting Diesel and to place his hands behind his back. DSUF at 53-54. Plaintiff failed to comply with these orders. DSUF at 54. Officer Gill used his elbow to apply "distraction strikes" to the back of plaintiff's head in order to gain plaintiff's compliance with his orders. DSUF at 55. Plaintiff stopped resisting Diesel, but he continued to refuse to follow Officer Gill's order to place his hands behind his back. DSUF at 56. Based on plaintiff's continued resistance and Officer Gill's inability to search plaintiff for weapons, he ordered Diesel to apprehend plaintiff again. ECF No. 20-3 at 9-10, ¶ 24. Diesel bit plaintiff in the back of the head. Id.; ECF No. 21 at 9. Once Officer Gill was able to see both of plaintiff's arms, he ordered Diesel to release his bite. DSUF at 57. In total, the bites to plaintiff by Diesel lasted approximately 20 seconds. DSUF at 58.

Following his arrest, plaintiff was transported to the hospital for treatment of his injuries. DSUF at 59. His dog bite wounds were cleaned, but plaintiff refused any stitches. DSUF at 60. Plaintiff does not remember receiving any pain medication while at the hospital, but he was given Ibuprofen once he was transferred to the Yolo County Jail. DSUF at 61. Plaintiff has no lingering pain or ongoing symptoms related to his injuries. DSUF at 62.

Plaintiff was convicted by a jury of several felony charges stemming from his conduct on June 30, 2015. DSUF at 63.

**IV.   Analysis**

On a motion for summary judgment, defendant must provide evidence to show that his decision to use his K-9 partner Diesel was objectively reasonable given the facts he knew at the time.

**A. Type and Amount of Force Used**

Applying the Graham factors, this court first considers the nature and quality of the force used against plaintiff. In this case plaintiff was bitten a total of two times lasting approximately 20 seconds. All of the force was applied to plaintiff while he was either actively resisting Diesel or while he was failing to follow Officer Gill's order to place his hands behind his back. Even

7

considering the additional strikes to plaintiff's head from Officer Gill's elbow, the amount of force used was not excessive. Moreover, plaintiff did not receive stitches for any of his injuries and has suffered no lasting effects from the dog bites. Here, based on the undisputed evidence, the court finds that the intrusion on plaintiff's Fourth Amendment rights was limited considering the nature and quality of force used by Officer Gill.

**B. Government's Interest in the Use of Force**

Next, this court considers the governmental interests at stake, mindful of the three factors identified by the Supreme Court in Graham. First, this court considers the severity of plaintiff's crimes. Graham, 490 U.S. at 396. Plaintiff was wanted for multiple felony charges including vehicle theft, hit and run, and for evading police during a high speed chase. The government has a legitimate interest in apprehending criminal suspects. See United States v. Hensley, 469 U.S. 221, 229 (1985) (referring to "the strong government interest in solving crimes and bringing offenders to justice"). Thus, this factor favors the government.

Second, this court considers whether plaintiff posed an immediate threat to the safety of the officers or others, which the Ninth Circuit recognizes as the most important of the three Graham factors. See Mattos, 661 F.3d at 441. From Officer Gill's perspective, plaintiff posed an immediate threat to public safety based on the presence of pedestrians in the area of K Street as well as the fact that he had been unable to search plaintiff for any weapons.

Third, this court considers whether plaintiff was actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396. Plaintiff fled the scene of a hit and run involving bicyclists, led Officer Gill on a high speed chase through downtown Sacramento, abandoned the car, and fled on foot. Plaintiff even testified in his deposition that he was trying to avoid arrest by running from Officer Gill. Accordingly, this factor favors the government as well.

**C. Balance Between the Gravity of the Intrusion and the Need for the Intrusion**

The court must now consider whether the force that was applied was reasonably necessary under the circumstances. Graham, 490 U.S. at 397. A suspect who showed a complete disregard for public safety by hitting bicyclists with his car, leading officers on a high speed chase, and who had not been searched for weapons, was running away from a single uniformed police officer in a

populated downtown street.  Under the totality of the circumstances, the government's strong interests in arresting plaintiff outweighed his legitimate interest in not being bitten by a dog.  Accordingly, use of the police dog was objectively reasonable and plaintiff's Fourth Amendment rights were not violated.  See Miller, 340 F.3d at 968 (concluding that officer's use of a police dog to bite and hold suspect until deputies arrived on the scene less than a minute later was a reasonable seizure that did not violate the suspect's Fourth Amendment rights); Mendoza, 27 F.3d at 1362–63 (holding that use of police dog to find and secure suspect, which resulted in two dog bites, was objectively reasonable).  Accordingly, the undersigned recommends granting defendant's motion for summary judgment.[4]

**V.    Plain Language Summary for Pro Se Party**

Since plaintiff is acting as his own attorney in this case, the court wants to make sure that the words of this order are understood.  The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed the pending motion for summary judgment as well as the evidence submitted by the parties and has concluded that the facts of your case are not sufficiently in dispute to warrant a trial.  You have fourteen days to explain to the court why this is not the correct outcome in your case.  If you choose to do this you should label your explanation as "Objections to Magistrate Judge's Findings and Recommendations."  The district court judge assigned to your case will review any objections that are filed and will make a final decision on the motion for summary judgment.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 20) be granted; and,
2. The Clerk of Court be directed to enter judgment in favor of defendant Gill and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

---

[4] The court finds it unnecessary to address defendant's remaining argument that he is entitled to summary judgment based on qualified immunity.

9

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 26, 2018

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/hous0763.msj.docx